UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AZELLA V. LUCKEY,

                Plaintiff,

-vs-                                                    Case No. 6:07-CV- 1105-ORL-28KRS

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the Complaint filed by Azella V. Luckey, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. No. 10, 11. The matter has been referred to me for issuance of a Report and Recommendation.

**I.     PROCEDURAL HISTORY.**

      In 2000, the SSA granted Luckey's request for an award of benefits under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq*. (sometimes referred to herein as the Act), based on the limitations arising from her paranoid personality disorder and physical limitations. R. 41-

49. These benefits ceased when Luckey was incarcerated. R. 14; *see also* R. 107, 159-60.[1]

On August 20, 2003, after being released from prison, Luckey filed a new application for SSI benefits. R. 82-86. She alleged that she became disabled on July 1, 2002. R. 82. Luckey's application was denied initially and on reconsideration. R. 52-58.

Luckey requested a hearing before an administrative law judge (ALJ). R. 59. An ALJ held a hearing on January 12, 2006. Luckey, who was represented by counsel, testified at the hearing. R. 22-40.

After considering the testimony and the medical evidence presented, the ALJ found that Luckey had not engaged in substantial gainful activity at any time relevant to the decision. R. 16.

The ALJ concluded that the medical evidence showed that Luckey had a leg deformity, back pain, and probable borderline intellectual functioning, which were severe

---

[1] The Commissioner correctly notes that Luckey is not entitled to an award of benefits during the time she was in prison. *See* 42 U.S.C. § 402(x)(1)(A)(l); 20 C.F.R. § 416.1335. Furthermore, SSA regulations provide that SSI benefits cease if a claimant is incarcerated for 12 consecutive months. *See* 20 C.F.R. §§ 416.1325(b), 416.1335. The record, including a document filed by the Commissioner in response to a supplemental briefing order, reflects that Luckey was incarcerated from July 2002 through August 8, 2003. Doc. No. 16-2; *see also* R. 107; *but see* R. 160. Luckey did not seek review of the suspension and later termination of her benefits. Accordingly, Luckey has only exhausted her administrative remedies as to the new application that is the subject of the present complaint. *See also* fn. 4 *infra*.

impairments. R. 16. These impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings).[2] R. 16-17.

The ALJ acknowledged that Luckey alleged that she had mental impairments, specifically paranoid personality disorder, but the record did not reflect that she had been treated for that condition after SSI benefits were granted. R. 18. He found that Luckey would have only mild limitations arising from her mental impairment, but that her impairment would not prevent her from performing all types of work. R. 17-18.

The ALJ found that Luckey had the residual functional capacity (RFC) to do the following:

> to lift and/or carry, and push/pull 20 pounds occasionally and 10 pounds frequently; walk and/or stand for approximately six hours out of an eight hour day, and sit for approximately six hours out of an eight hour day. She can use her arms and hands for grasping, holding, and turning objects without limitations. She can perform occasional bending and/or stooping. It is therefore concluded that the claimant retains the residual functional capacity for a significant range of work at the light level of exertion. Secondary to the claimant's probable borderline intellectual functioning, she should be limited to unskilled work.

R. 17.

---

[2] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

In reaching this conclusion, the ALJ noted that Luckey had not required medical treatment for her congenital abnormalities. Therefore, he found Luckey's testimony not fully credible. R. 18.

The ALJ concluded that Luckey could not return to her past relevant work. R. 18. He concluded that Luckey could perform either a significant or full range of light work. *Compare* R. 17 *with* R. 19. Relying exclusively on the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that there were jobs available that Luckey could perform. R. 18-19. Accordingly, he concluded that Luckey was not disabled.

Luckey asked the Appeals Council to review the ALJ's decision. R. 278-79. On May 17, 2007, the Appeals Council found no basis to review the ALJ's decision. Doc. No. 7-9. Luckey timely sought review by this Court. Doc. No. 1.

## II.     JURISDICTION.

Plaintiff having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.    STATEMENT OF FACTS.

Many of the essential facts of record are set forth in the ALJ's decision and in the parties' memoranda. Accordingly, I will only summarize the pertinent facts to protect Luckey's privacy to the extent possible.

Luckey was 28 years old on the date of the hearing. R. 26. She attended school through the ninth grade in special education classes. R. 26-27. She had some difficulty with reading and writing. R. 27.

She had tried to work at McDonald's but had difficulty standing and walking. R. 35.  She also worked a few weeks in a production job.  R. 39.

One of Luckey's legs was shorter than the other leg due to a birth defect.  R. 27-28.  She had constant pain in her foot and ankle, and swelling in her leg.  R. 33.  Nevertheless, she testified that she could walk around a track one time.  R. 28.  She could sit for about 10 minutes before her back started to bother her.  R. 29.  She could stand 15 to 20 minutes.  R. 29.

She sometimes experienced seizures, but had not had any seizures since her previous disability application  R. 29, 202.  She also had problems with memory.  R. 30.  She was often fatigued.  R. 32.  She was not seeking medical treatment because of lack of money.  R. 33.

Luckey did not trust people, and she angered easily.  R. 30-31.  She had few friends.  R. 31.  She believed that other people watched her, but she did not have hallucinations.  R. 32.

In October 1997, J. Jeff Oatley, Ph.D., examined Luckey.  At that time, she was irritated and angry.  An MMPI test showed some suggestion of malingering, but was essentially valid.  Dr. Oatley's diagnosis was that Luckey suffered from paranoid personality disorder.  R. 268-70.

Dr. Oatley examined Luckey again in April 1999.  He found signs of paranoia still present "as indicated by suspiciousness, doubts loyalty of friends, will not confide in others, is easily angered, and maintains anger towards others."  R. 267.  Dr. Oatley recommended anger control sessions.  *Id.*  Luckey attended counseling sessions, but the treating professional reported no improvement in her condition.  R. 276-77.  Notes of

contact with Luckey by SSA personnel in 2003 reflect that Luckey continued to express anger.  *See* R. 153, 155.

In May 1999, James G. Hull, D.O., examined Luckey at the request of the SSA. R. 271-75. He found that Luckey had a congenital abnormality of a growth deficiency in her left leg and a congenital abnormality in her left foot and a toe on her right foot. R. 274.  She also had rather severe scoliosis.  R. 275.  She walked slowly.  He opined that doing any manual labor "would exacerbate her already present chronic muscle spasm."  R. 275.

In October 2003, Darwin Caraballo, M.D., examined Luckey at the request of the SSA.  R. 209-14. Dr. Caraballo observed that Luckey's left leg is thinner and shorter than the right leg, resulting in significant pain and discomfort in the hip.  She also has scoliosis of the lumbar spine.  R. 209-10.  Upon examination, she had full range of motion and normal grip strength.  R. 210-11.  A straight-leg raising test was positive in the lower extremities.  Dr. Carballo observed that Luckey walked slowly with a limp.  R. 211.

Dr. Graham examined Luckey at the request of the SSA on March 25, 2004. Dr. Graham administered a WAIS-III test, which showed the Luckey had a full scale IQ of 56. R. 261.    Although Dr. Graham found the IQ scores to be suspect, he opined that she was functioning in the mild range of mental retardation.  R. 262.  He also opined that Luckey suffered from probable anti-social personality disorder.  He assessed her global

assessment of functioning (GAF) as 65 to 75.[3]  R. 262.  He indicated that Luckey was at a high risk of returning to anti-social behavior.  R. 263.

In November 2003, Donald Warren Morford, M.D., prepared a physical RFC assessment based on a review of Luckey's records.  R. 229-36.  He opined that Luckey could lift up to 20 pounds occasionally and 10 pounds frequently.  She could sit, stand or walk about 6 hours in an 8-hour workday.  She would be limited in the ability to push and pull with her legs.  R. 230. She could only occasionally engage in postural activities.  R. 231.  She should avoid even moderate exposure to hazards such as machinery and heights.  R. 233.

In 2004, James C. Jamison, M.D., also prepared a physical RFC assessment based on review of Luckey's records.  He concurred with Mr. Morford's assessment, except that he found that Luckey should avoid concentrated exposure to hazards.  R. 251-58.

Both professionals who were asked to prepare mental RFC assessments determined that there was insufficient evidence in the record to render a decision.  R. 215-28, 237-50.

---

[3] The Global Assessment of Functioning ("GAF") scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself).  *Harold I. Kaplan, M.D. & Benjamin J. Sadock, M.D., Synopsis of Psychiatry* 299 (8th ed. 1998) (hereinafter *Synopsis of Psychiatry*). A GAF rating between 61 and 70 reflects: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.*  Scores between 71 and 80 indicate that if symptoms are present, they are transient and expectable reactions to psychosocial stressors. There should be no more than slight impairments in social, occupational, or school functioning.  *Id*.

**IV.     STANDARD OF REVIEW.**

To be entitled to disability benefits under SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

>  (1) Is the claimant presently unemployed?
>
>  (2) Is the claimant's impairment severe?
>
>  (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
>  (4) Is the claimant unable to perform his or her former occupation?
>
>  (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g., McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.   ANALYSIS.

Luckey contends only that the ALJ erred in determining her mental functional capacity. Specifically, Luckey argues that the ALJ should have credited Dr. Oatley's 1997 finding that she suffered from a paranoid personality disorder. She submits that the ALJ did not indicate the weight he gave to Dr. Oatley and Dr. Graham's opinions. Finally, she submits that the ALJ applied the incorrect legal standard at step five of the sequential evaluation. These are the only issues I will address.[4]

---

[4] The parties were advised that issues not specifically raised would be waived. Doc. No. 12. In a supplemental brief authorized solely to address the issue of whether the Commissioner used the correct standard in reviewing Luckey's application, Luckey raised a new issue regarding whether the ALJ's original decision finding Luckey to be disabled is binding and the law of the case. Because Luckey did not raise this issue in her initial memorandum of law, and the Commissioner has not had an opportunity to respond to it, I find that it has been waived. Alternatively, I recommend that this Court find that it does not have jurisdiction with respect to the newly asserted issue because Luckey failed to exhaust her administrative remedies by seeking review of the suspension of her SSI benefits due to her incarceration. *Cf. Linden v. Soc. Sec. Admin.*,

### A.   *Personality Disorder at Step Two.*

Luckey contends that the ALJ erred in failing to treat her personality disorder as a severe impairment at step two of the sequential analysis. At step two of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that his impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). However, failure to find an impairment severe at step two can be harmless error if the ALJ considers the functional limitations of the impairment at later steps of the evaluation. *See, e.g., Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In this case, the ALJ considered Luckey's mental impairment of paranoid personality disorder and borderline intellectual functioning. R. 16, 18. He found that Luckey's mental impairments would result in only mild limitations of activities of daily living, social functioning and concentration. R. 17. Because the ALJ evaluated the limitations arising from Luckey's mental impairments, the failure to identify her personality disorder as severe at step two is, at most, harmless error.

---

Civ. S-04-2696 FCD Pan (GGH) PS, 2006 WL 2169177, at * 3-4 (E.D. Cal. Aug. 1, 2006)(analyzing court's jurisdiction to review suspension of retirement benefits while recipient was incarcerated).

*B. Weight Given to Opinions of Drs. Oatley and Graham.*

As discussed above, Dr. Oatley, a board certified psychologist, opined in 1997 and 1999 that Luckey suffered from a paranoid personality disorder. After the alleged disability onset date for the purposes of the present disability application, Dr. Graham, a clinical psychologist, determined that Luckey was mildly mentally retarded and had an anti-social personality disorder.

The ALJ acknowledged Dr. Oatley's diagnosis. R. 18. He agreed with the portion of Dr. Graham's opinion in which he expressed concern about the validity of the WAIS-III test, but rejected Dr. Graham's conclusion that Luckey was mildly mentally retarded. R. 17. He stated that he "was not persuaded by the evidence of record that there is a mental impairment present."

"In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). In the present case, the ALJ rejected Dr. Oatley's opinion in its entirety and credited only a portion of Dr. Graham's decision. This is sufficient to state the weight given to the two opinions.

The ALJ also explained the reason for these decisions. He noted that the record did not reveal that Luckey had received treatment for her mental impairments after being found to be disabled originally. He correctly noted that during that time Luckey's financial limitations would not have precluded her from seeking treatment because she had Medicare coverage as part of the disability determination. R. 18.

Furthermore, the ALJ found that Luckey's mental impairments would result in only mild limitations of function. This is supported by Dr. Graham's determination that Luckey had a GAF score between 65 and 75, indicative of transient to mild limitations.

With respect to her intellectual ability, the ALJ credited Dr. Graham's observation that the IQ score determined through testing likely understated Luckey's intellectual functioning. Nevertheless, he found based on the full scale IQ score that Luckey had probable borderline intellectual functioning, and limited her RFC to unskilled work.

This was sufficient to fulfill the ALJ's duty to state the weight given to Dr. Oatley and Dr. Graham's opinions and the reasons therefor.

### C. Incorrect Legal Standard.

Finally, Luckey argues that the ALJ used an incorrect legal standard when he wrote as follows: "The undersigned is not persuaded by the evidence of record that there is a mental impairment present that would prevent her from performing all types of work." R. 18. Luckey correctly argues that even if her mental impairment limited her ability to perform the wide range of work at a given exertional level, she could be found to be disabled.

Read in context, this statement by the ALJ does not establish that an incorrect legal standard was used. Rather, as discussed herein, the ALJ made the requisite findings about the functional limitations arising from Luckey's mental impairments. He credited those impairments to the extent he found her RFC limited to unskilled work. As such, this assignment of error is unavailing.

## VI. RECOMMENDATION.

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **AFFIRMED**. I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 12th day of August, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE